UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN WESLEY CARR, ) | No. CV-12-03026-CI |
| ) | |
| Plaintiff, ) | ORDER GRANTING DEFENDANT'S |
| ) | MOTION FOR SUMMARY JUDGMENT |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, Commissioner ) | |
| of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

BEFORE THE COURT are cross-motions for Summary Judgment.  ECF No. 18, 21.  Attorney D. James Tree represents John W. Carr (Plaintiff); Special Assistant United States Attorney Matthew W. Pile represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit.  42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

**JURISDICTION**

On December 5, 2007, Plaintiff filed an application for Supplemental Security Income, alleging disability beginning October 18, 2007.  Tr. 12; 136.  Plaintiff reported that he could not work due to colitis, high blood pressure, right ankle problems, stomach problems, back and hip pain and shoulder injury.   Tr. 141.  Plaintiff's claim was denied initially and on reconsideration, and he requested a hearing before an administrative law judge (ALJ).  Tr. 67-113.  A hearing was held in Portland, Oregon, on March 17, 2010, at which vocational expert Paul Morrison, medical expert Lawrence Duckler, M.D., and Plaintiff,[2] who was represented by counsel, testified.  Tr. 24-64.  ALJ Donna Montano presided.  Tr. 24.  The ALJ denied benefits on March 26, 2010.  Tr. 12-20.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.  At the time of the hearing, Plaintiff was 39 years old, living with his wife and one daughter.  Tr. 35; 120.  Plaintiff testified that he graduated from high school, and later earned "an associates of arts in automotive." Tr. 36.  He has worked as a mechanic, shop foreman, warehouseman and with installation of insulation.   Tr. 36.

Plaintiff is five foot nine inches tall, and weighs 230 pounds. Tr. 421.  He testified that often, his wife helps him dress.  Tr. 35.  He said he tries to keep the wood stove stocked with firewood, and his wife and her daughter do most of the other household chores.

---

[2]Plaintiff appeared via video from The Dalles, Oregon.  Tr. 12.

Tr. 35.  Plaintiff said his right shoulder pain limits his ability to lift his arm and carry weight.  Tr. 31.  He also said he has carpal tunnel syndrome and as a result he can type for only fifteen minutes and write for five minutes before his hand cramps.  Tr. 32. He said he wears an ankle brace because he has bone spurs and calcium deposits.  Tr. 38.

Plaintiff described some of his physical symptoms:

Besides I can't hardly sit.  I have to lean off to the side.  I can be walking, I can sneeze, step in a little hole or just anything, and my legs will completely go numb.  I'll lose function down below and fall flat on my face, and I can't lift anything.  I have to - to relieve the pressure off my back, I have to lay flat on my back with my feet propped up over.  And that's the only way I can get the actual pain to subside to where I can tolerate it for a little while.

Tr. 32.  Plaintiff also said he spends two-thirds of the day flat on his back to "keep the pain down," so he can avoid taking pain medication that irritates his colitis.  Tr. 33.  Plaintiff explained that on a "daily basis" after he eats, he burps acid and blood.  Tr. 33.  Plaintiff also said that can sit for fifteen to twenty minutes before he has to change positions to relieve the pressure on his back.  Tr. 34.

He said he has "more worse days than good days."  Tr. 34.  He described that "on my good days, I might get an hour and then I have to go and relax and get the pressure off my back, but that's very rare when I have those."  Tr. 34.  On bad days, Plaintiff said he sits on the couch with his feet up, or spends the day icing his back while he lies in his bedroom. Tr. 34-35.

Plaintiff explained that he has not worked in ten years, and he is now seeking Social Security benefits because his step-daughters, who have been receiving Social Security benefits as a result of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

their late father's death, were turning 18 and moving out of the house.  Tr. 39-40.

## ADMINISTRATIVE DECISION

At step one, ALJ Montano found that Plaintiff had not engaged in substantial gainful activity since December 5, 2007.  Tr. 14.  At step two, she found Plaintiff had the severe impairments of status post right carpal tunnel repair, degenerative joint disease of the right ankle, degenerative disc disease of the lumbar spine, and right shoulder cuff tear status post repair.  Tr. 14.  At step three, the ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1(20 C.F.R. 416.920(d), 416.925 and 416.926).  Tr. 15.  The ALJ found Plaintiff has the residual functional capacity ("RFC") to perform modified sedentary work during which he can occasionally stoop, kneel, crouch or crawl, and he should not reach overhead with his right arm.  Tr. 16.  In step four findings, the ALJ found Plaintiff's statements regarding pain and limitations were not credible to the extent they were inconsistent with the RFC assessment.  Tr. 17.  The ALJ found that Plaintiff is incapable of performing past relevant work.  Tr. 19.  After considering Plaintiff's age, education and work experience, and residual functional capacity, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff can perform, such as surveillance systems monitor, charge account clerk, and telephone quotation clerk.  Tr. 20.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**ISSUES**

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends that the ALJ erred by improperly rejecting treating medical source opinions, finding Plaintiff was not credible and by failing to identify specific jobs Plaintiff can perform that are consistent with his functional limitations. ECF No. 19 at 12-20.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

**DISCUSSION**

**1.   Medical Opinions.**

Plaintiff argues that the ALJ failed to provide "specific and legitimate" reasons supported by substantial evidence for rejecting Drs. Ho and Garnett's opinions, and the ALJ erred in weighing the opinion of David Tuning, PA-C.  ECF No. 19 at 13-17.

*a.   Marie Ho, M.D.*

Plaintiff argues that while the ALJ indicated she accepted Dr. Ho's opinion as "generally consistent" with the RFC determination, the ALJ failed to adopt her assessment that Plaintiff should not kneel, crouch or squat.  ECF No. 19 at 12-13.

Dr. Ho evaluated Plaintiff on February 23, 2008, and opined that Plaintiff's postural limitations should include avoiding kneeling, crouching and squatting.  Tr. 424.  The ALJ concluded, "Dr. Ho's opinions are generally consistent with the residual functional capacity determined in this decision and are given weight."  Tr. 18.  Yet the ALJ crafted an RFC that indicates Plaintiff can occasionally stoop, kneel, crouch or crawl.  Tr. 16. The Defendant concedes that the ALJ erred by failing to give reasons for rejecting Dr. Ho's opinions about Plaintiff's postural limitations, but contends that the error is harmless.  ECF No. 22 at 15.  The court agrees.  An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th cir. 2008).  As Defendant points out, none of the three identified occupations that Plaintiff can perform - charge account clerk,[3]

---

[3]DOT #205.367-014.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

telephone quotation clerk,[4] surveillance system monitor[5] – require kneeling, crouching, or squatting.  Because none of the occupations violate the postural limitations identified by Dr. Ho, the ALJ's failure to incorporate the postural limitations assessed by Dr. Ho into Plaintiff's RFC is inconsequential to the outcome of this case.

      *b.   David Tuning, PA-C.*

      Plaintiff argues that the ALJ erred by rejecting the opinion from David Tuning, PA-C.[6]  ECF No. 19 at 13-15.  The record reveals that Mr. Tuning treated Plaintiff from January 14, 2009, to February 4, 2010.  Tr. 442-47.  On March 25, 2009, Plaintiff returned to Mr. Tuning in a follow-up visit to assess if Plaintiff could return to work.  Mr. Tuning indicated that he recommended sedentary work for Plaintiff:

> I advised him that I was recommending sedentary work activity and that he could participate in job search and training as if he is ever going to return to work he will need retraining for sedentary level of activity.  He finds that when he is up much longer than this, or sits for too long, he has increased back pain.
>
>                               \* \* \*
>
> I recommend sedentary work level for John.

---

   [4]DOT #237.367-046.

   [5]DOT #379.367-010.

   [6]Plaintiff argues that the ALJ gave no reason for rejecting Dr. Garnett's opinion that Plaintiff would miss at least four days of work per month due to his limitations.  ECF No. 19 at 13.  The record reflects that this opinion is attributable to Mr. Tuning, not Dr. Garnett.  Tr. 462.

Tr. 447.  A little less than one year later, Mr. Tuning completed a "Medical Report" in which he indicated that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate, and he opined Plaintiff's condition would likely cause him to miss work at least four days or more per month.  Tr. 462.

The ALJ gave no weight to Mr. Tuning's medical opinions for two reasons: (1) he is not an acceptable medical source; and (2) his statements were inconsistent.  Tr. 18.  The ALJ acknowledged that, as an unacceptable medical source, Mr. Tuning "may provide insight into the severity of the claimant's impairments, and how they affect his ability to function."  Tr. 18.  The ALJ noted that Mr. Tuning's 2010 assessment contradicted his treatment records and was inconsistent with his 2009 assessment, and therefore the 2010 opinion was "unimpressive."  Tr. 18.

Plaintiff's argument that the ALJ erred by discounting Mr. Tuning's medical opinions is not persuasive.  The ALJ properly noted that an unaccepted medical source may not provide medical opinions.  Tr. 18.  In the Social Security disability context, physician assistants are considered "other sources" and are not "acceptable medical sources."  See 20 C.F.R. § 404.1513(a),(d); accord 20 C.F.R. § 416.913(a),(d).  Only acceptable medical sources may provide medical opinions.  See 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

physical or mental restrictions."); accord 20 C.F.R. § 416.927(a)(2).

The ALJ noted that Mr. Tuning's opinion could provide insight into the severity of Plaintiff's impairments, but that his opinions from the years 2009 and 2010 were contradictory. The ALJ may reject a medical providers' opinion that is contradicted by the provider's clinical notes and observations. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). In this case, Mr. Tuning unequivocally recommended sedentary work[7] for Plaintiff in 2009. Tr. 447. While Plaintiff urges that Mr. Tuning's recommendation was merely a hypothetical hope that Plaintiff could return to work someday in the future, Mr. Tuning's words are not ambiguous and do not convey such a meaning. The record does not reveal, and Plaintiff does not point out, objective medical evidence establishing a deterioration in Plaintiff's condition between the years 2009 and 2010 that would explain Mr. Tuning's change of opinion. In the absence of such evidence, Mr. Tuning's 2009 opinion recommending sedentary work and his 2010 opinion that Plaintiff cannot work are inconsistent. The ALJ did not err by rejecting Mr. Tuning's opinion.

**2. Credibility.**

Plaintiff asserts that the ALJ erred by finding his subjective complaints were not credible. ECF No. 19 at 17. Plaintiff argues that the ALJ provided vague assertions and failed to specify the inconsistencies between Plaintiff's testimony and the medical

---

[7]"I recommend sedentary work level for John." Tr. 447.

evidence.   ECF No. 19 at 17-19.   For the ALJ to reject the claimant's complaints, he must provide "specific, cogent reasons for the disbelief." *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990); *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995).   Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir. 1991); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986)("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings").   Unless affirmative evidence exists establishing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).   General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988).

The ALJ discounted Plaintiff's credibility based upon three reasons: (1) Plaintiff had not worked for ten years prior to his alleged onset date; (2) no significant objective medical findings supported his allegations; and (3) two examining physicians noted

positive Waddell's signs.[8]  Tr. 17.  The ALJ's reasons are clear and convincing, as well as supported by the record.  First, as the ALJ noted, Plaintiff admitted that he had not worked since 1997.  When asked to explain his lack of work for the past decade, Plaintiff indicated he had other income sources: "[M]y wife did some work and we were on the system, plus we were getting some money in for my daughters, my two oldest daughters from their dad before he [passed] away."  Tr. 37.  A poor work history is a relevant factor in a credibility determination.  *Thomas v Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002)(poor work history shows "little propensity to work" and negatively affects a credibility determination); see also *Schaal v. Apfel,* 134 F.3d 496, 502 (2nd Cir. 1998) (poor work history is properly considered in a credibility evaluation).  In this case, Plaintiff's admission that he did not work for over ten years was a proper factor to consider in determining the credibility of his claim that he was incapable of working.

Second, the ALJ discounted Plaintiff's credibility because the record reveals no significant objective medical findings to substantiate Plaintiff's allegations of complete disability.  Tr. 17.  Lack of objective medical evidence to support a plaintiff's

---

[8]"Waddell's signs" are a group of physical signs that may indicate a non-organic or psychological component to low back pain. See Gordon Waddell, John McCulloch, Ed Kummel & Robert Venner, "Nonorganic Physical Signs in Low-Back Pain," Spine 5(2), 117-125 (March/April 1980).

claim is properly considered in determining credibility.  See *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957 (lack of objective medical evidence supporting descriptions of pain and limitations negatively affected the claimant's credibility regarding her inability to work).   While a lack of objective evidence supporting plaintiff's symptoms cannot be the sole reason for rejecting allegations of pain, it can be one of several factors used in evaluating the credibility of subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

The record supports the ALJ's determination that the objective medical evidence does not reveal a medical cause for Plaintiff's pain complaints.   For example, medical expert Lawrence Duckler, M.D., reviewed the medical record and testified that while Plaintiff exhibited some evidence of gastroesophagitis, his upper endoscopy, colonoscopy and abdominal CT scan were normal.   Tr. 43; 380-85. Additionally, Plaintiff's back pain was diagnosed as degenerative disc disease, but a discogram test was "completely negative" at the level where his spine had significant degenerative changes, and surgery was not recommended.   Tr. 44-47; 454.   Dr. Ho found that Plaintiff could stand and walk cumulatively at least two hours in an eight hour day, and he could sit up to six hours in an eight-hour day.     Tr. 424.     Neither Dr. Duckler nor Plaintiff's gastroenterologist could identify objective medical evidence that caused Plaintiff's pain.   Tr. 44-45; 380-84.

Also, the ALJ noted that Plaintiff did not seek follow up treatment after his rotator cuff surgery, which is properly

considered in determining the credibility of complaints related to his shoulder.  The ALJ may consider many factors in weighing a claimant's credibility, including unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.  *Tommasetti av. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated. . . ."  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (citation omitted).

The final reason the ALJ gave for discounting Plaintiff's credibility was the existence of positive "Waddell signs" that suggested a non-organic component to low back complaints, and Dr. Ho's observation that Plaintiff may not have been exerting adequate effort, and was presenting "pain behavior."  Tr. 17.  These reasons are also supported by the record.  See Tr. 421; 423; 455.  Failure to give maximum or consistent effort during testing is an appropriate factor to consider when determining a claimant's credibility.  *Thomas*, 278 F.3d at 959; *Rautio v. Bowen*, 862 F.2d 176, 179-80 (8th Cir. 1988) (failure to cooperate during examinations supported ALJ's conclusion that claimant was not credible).  Contrary to Plaintiff's argument, the ALJ's credibility analysis was sufficiently specific, supported by substantial evidence in the record, and based upon appropriate factors.  The ALJ did not err.

**3.   Step Five.**

Plaintiff alleges that the vocational testimony was without evidentiary value because the hypothetical posed to the vocational expert was flawed. ECF No. 19 at 19. For the vocational expert's testimony to constitute substantial evidence, the ALJ must present the vocational expert with a hypothetical based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations. *Andrews*, 53 F.3d at 1044. The hypothetical should be "accurate, detailed and supported by the medical record." *Tackett*, 180 F.3d at 1101. Where a hypothetical fails to reflect each of the claimant's limitations that are supported by substantial evidence, the vocational expert's answer has no evidentiary value. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("[b]ecause neither the hypothetical nor the answer properly set forth all of [claimant's] impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").

In this case, the ALJ's hypothetical encompassed all restrictions that were supported by substantial evidence in the record and thus was a proper hypothetical. See *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). The ALJ correctly excluded from his hypothetical limitations alleged by Plaintiff that were not supported by the evidence. *See id.* Because the ALJ was not required to include properly rejected limitations asserted by the Plaintiff, the hypothetical relied upon by the VE reflect limitations supported by the record and credible testimony. Therefore, the ALJ's findings are based on substantial evidence and

are free of legal error.

Plaintiff next challenges the representative occupations identified by the vocational expert. ECF No. 19 at 19-20.[9] Specifically, Plaintiff argues that the jobs of telephone quotation clerk and charge account clerk do not exist in significant numbers in Oregon. ECF No. 19 at 20. At step five of the sequential analysis, if the impairment prevents the claimant from performing his or her past work, a determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy is necessary; if so, the claimant is not disabled and the analysis ends. 20 C.F.R. §§ 404.1520(a)-(e) & 416.920(a)-(g). At this stage of the analysis, the ALJ should consider the claimant's RFC and vocational factors such as age, education, and past work experience. 20 C.F.R. §§ 404.1520(f); 416.920(f). The Commissioner bears the burden of establishing the existence of alternative jobs available to the claimant, given his or her age, education, and medical-vocational background. See 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Heckler v. Campbell*, 461 U.S. 458, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983). The work must exist in significant numbers in the national economy. 20 C.F.R. §

---

[9]Plaintiff argues and Defendant concedes that the jobs of animal shelter and appointment clerk may not be used because they are classified as semi-skilled positions. ECF No. 19 at 20; ECF No. 22 at n.2. Accordingly, the court will not address these positions.

404.1520(a)(4)(v); *Lockwood v. Comm'r of the Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of jobs." *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012). However, that court has held that 1,266 jobs regionally is a "significant number." *Id.* (citing *Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1479 (9th Cir. 1989)); see also *Thomas*, 278 F.3d at 960 (1,300 jobs in state sufficient); *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (between 1,000 and 1,500 jobs in local area sufficient). The Ninth Circuit also held that 64,000 nationally is a "significant number." *See Moncada v. Chater,* 60 F.3d 521, 524 (9th Cir. 1995) (2,300 jobs regionally, 64,000 nationally are significant numbers); see also *Albidrez v. Astrue*, 504 F. Supp.2d 814, 824 (C.D. Cal. 2007) (17,382 jobs nationally is a "significant number"). In *Beltran*, the Ninth Circuit held that a mere 135 regional jobs and 1,680 national jobs are "very rare" numbers and thus not "significant" within the meaning of the Social Security Act. *Beltran*, 676 F.3d at 1206. If the number of jobs available either regionally or nationally is "significant," an ALJ's decision must be upheld. See 42 U.S.C. § 423(d)(2)(A); *Beltran*, 676 F.3d at 1206.

In this case, the vocational expert based his testimony upon the DOT. Tr. 62. The VE testified that charge account has 79,000 positions nationally and 800 in Oregon, and a telephone quotation clerk has 54,000 positions nationally and 500 in Oregon. Tr. 62-63.

Plaintiff's argument that the ALJ must establish a significant number of jobs within Plaintiff's home state is not supported by the regulations.

Plaintiff is deemed to be disabled if no work exists "in the national economy, regardless of whether such work exists in the immediate area in which he lives..." 42 U.S.C. § 423(d)(2)(A). The regulation defines "work which exists in the national economy" as work existing "in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* As such, the statute does not require the ALJ establish that jobs are located in Plaintiff's home state.    In this case, after considering the proper factors, the ALJ sufficiently established the existence of a significant number of alternative jobs available regionally.

Finally, Plaintiff argues that the position of surveillance monitor does not exist in significant numbers at the sedentary unskilled level, and in support of his argument, he cites to 65 pages of documents he submitted.   ECF No. 19 at 19; Tr. 298-363. Plaintiff provides the court with no analysis or explanation about the substance or materiality of the submitted documents.   The court will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief. *See Carmickle*, 533 F.3d at 1161 n.2. Moreover, the ALJ is not required to discuss all evidence presented to him, although he must "explain why significant probative evidence has been rejected." *Vincent ex rel.*

*Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation and quotation marks omitted).  The evidence Plaintiff submitted was neither significant nor probative.  It did not provide information regarding the number of jobs available in the local and national economies, and even if it had, the ALJ already relied on a proper source for that information – the VE's testimony, based on the DOT. The ALJ did not err by relying upon the vocational expert's testimony.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is supported by substantial evidence and is not based on legal error.   Accordingly,

**IT IS ORDERED:**

1.   Defendant's Motion for Summary Judgment (**ECF No. 21**) is **GRANTED.**

2.   Plaintiff's Motion for Summary Judgment **(ECF No. 18)** is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **DEFENDANT** and the file shall be **CLOSED.**

DATED July 26, 2013.


_____S/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 19